UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL FILE NO.:

---

| | |
|---|---|
| ELIZABETH BUSCH and THOMAS BUSCH, on behalf of themselves and all others similarly situated, | **COMPLAINT AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227** *et seq.* |
| Plaintiffs, | |
| v. | <u>DEMAND FOR JURY TRIAL</u> |
| BLUESTEM BRANDS, INC. D/B/A FINGERHUT, | |
| Defendant. | |

_____

## INTRODUCTION

1. Elizabeth Busch and Thomas Busch ("Plaintiffs") bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Bluestem Brands, Inc. dba Fingerhut ("Defendant" or "Fingerhut"), in negligently, and/or willfully contacting Plaintiffs through telephone calls on Plaintiffs' cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiffs' privacy. Plaintiffs allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

2. Fingerhut is an online retailer to which allows consumers to purchase goods through fingerhut.com, the Fingerhut catalog or over the phone through a

1

Fingerhut credit account. Fingerhut also makes collection calls to consumers for purchases made and debt accrued through their service.

3. In an attempt to collect on alleged debts owed, Fingerhut routinely contacts alleged debtors through telephone calls and text messages with automatic telephone dialing equipment. However, when Fingerhut is unable to reach the alleged debtors by a telephone number provided by the debtor, Fingerhut results to locating new numbers on its own through unreliable skip tracing methods or through number trapping – a number that it necessarily lacks express consent to call. Unfortunately, as a result of this business practice, Fingerhut regularly makes calls and sends text messages to cellular telephone numbers, without consent, in violation of the TCPA. Additionally, after being warned of an incorrect intended recipient of the call or advised to no longer call, Fingerhut continues to make calls and send text messages to wrong numbers.

4. The TCPA strictly forbids nuisance calls exactly like those alleged in this Complaint – intrusive phone calls and text messages to private cellular phones, placed to numbers obtained without the prior express consent of the call recipients.

5. Fingerhut's violations caused Plaintiffs and members of the Classes actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited phone calls, as well as the violation of their statutory rights.

6. Plaintiffs seek an injunction stopping Fingerhut from making unsolicited phone calls and sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

**JURISDICTION AND VENUE**

7. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seek up to $1,500 in damages for each call/text messages in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands,

exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, a federal statute.

9. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. §§ 1391(b) because Defendant, at all times herein mentioned, was doing business in the State of Minnesota, and a substantial part of the events giving rise to the claim occurred in this jurisdiction.

## PARTIES

10. Plaintiff Elizabeth Busch is, and at all times mentioned herein was, a resident of the State of Connecticut. She is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

11. Plaintiff Thomas Busch is, and at all times mentioned herein was, a resident of the State of Connecticut. He is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

12. Defendant Fingerhut maintains its corporate office at 6509 Flying Cloud Dr., Eden Prairie, MN 55344 and is a "person" as defined by 47 U.S.C. § 153 (32).

13. Plaintiffs allege that at all times relevant herein Fingerhut conducted business in the state of Minnesota and within this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. §§ 227 *et seq.*

14. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

15. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

17. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

"prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

18. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiffs provided express consent within the meaning of the statute.

19. A text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

20. Plaintiff Thomas Busch opened a Fingerhut account in or around 2013. Plaintiff Thomas Busch did not provide Fingerhut with his cellular phone number.

21. Plaintiff Elizabeth Busch does not have a Fingerhut account and never provided Fingerhut with her cellular phone number.

22. Beginning around at least January 2014, Plaintiff Thomas Busch received a number of unsolicited phone calls and text messages from Fingerhut to his wireless phone, for which Plaintiff Thomas Busch provided no consent to call. Plaintiff Thomas Busch would, at times, receive calls up to five times per day.

23. Despite having no account with Fingerhut, beginning around at least January 2014, Plaintiff Elizabeth Busch also received unsolicited phone calls and text messages from Fingerhut to her wireless phone, for which Plaintiff Elizabeth Busch provide no consent to call. Plaintiff Elizabeth Busch does not know how Fingerhut received her number but believes Fingerhut may have used a technique

---

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

5

called number trapping whereby, an entity will "trap" a person phone number who calls into the entity.

24.     Specifically, one of the unsolicited text messages received by Plaintiff Elizabeth Busch was from SMS code number 40-537.  On January 26, 2016, the message Plaintiff received from Defendant stated: "Fingerhut:  Download the Fingerhut Mobile App to View Your Credit, Pay Your Bill & Receive Account Notifications. Goo.gl/zlyU1Z.  Reply STOP to cancel msgs to this # Fingerhut Acct Alerts will come from 40537".

25.     Like the January 26, 2016 text message Plaintiff received, other text messages received by the Plaintiffs were generic and impersonal in nature.

26.     The unsolicited phone calls received by Plaintiffs were made by artificial and prerecorded voices.

27.     These unsolicited phone calls and text messages placed to Plaintiffs' wireless telephones were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and by using "an artificial or prerecorded voice" system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place telephone calls to Plaintiffs' cellular telephone.

28.     The existence of this ATDS is further evidence by the sheer volume of calls and text messages received by Plaintiffs.  Defendant could only make such calls using such automated equipment.

29.     The existence of this ATDS is further evidenced by the fact that the text messages received by Plaintiffs were generic as to the intended recipient, i.e., the text messages do not address Plaintiffs individually or in any fashion.  Such generic and impersonal messages indicate that these text messages were sent in bulk fashion to numerous cellular telephones at one time and not manually delivered by human intervention for each and every delivery.

30. The telephone numbers that Defendant, or its agents, called were assigned to cellular telephone services for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

31. These telephone calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

32. Despite Plaintiffs informing Fingerhut to stop calling and texting, Fingerhut's autodialer calls and texts to Plaintiffs' cellular phone numbers continued.

33. On information and belief, Fingerhut has a corporate policy to use an automatic telephone dialing system or pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiffs' cellular telephones in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of a number.

34. Thus, these telephone calls and text messages by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

35. On January 23, 2014, Plaintiff Thomas Busch filed the following complaint with the Better Business Bureau's Online Complaint System discussing Fingerhut's harassing conduct.

> I have a account with Fingerhut, it has been a nighmare to say the least. They schedule me for a payment plan than they change the amount due because of the their billing mistakes. They charge overlimit fees, late fees I called them several times a month about my bill. So then they put me on a special payment plan of $20.00 a month starting on 12/13/13 with APR of 14.90% and took away my credit limit they did this over the phone one day without telling me I was on a special plan. **Then they started texting me that I owed them money they were calling me approximately 5 times a day for several days on my cell phone I dont even know how they got my number**. It was terrible so I made another payment to stop the calls and the texts then it starts again so I told them about the letter I got in the mail and that I was suppose to be on a Special Payment Plan and they said as soon as you made another payment the Special Payment

7

Plan was null & void. My balance this month with them was $52.1 65 with a payment due of $87.97 which I paid at a 24.9% interest rate. I am suppose to now have a payment of $30.00 every month due on the 20th of every month, I am sure something will happen as to why they mess that up to I will never out of debt with their billing procedures. It is terrible and it is illegal the way they have treated me. [sic]

36.     On February 2, 2014, Plaintiff Thomas Busch filed a second complaint with the Better Business Bureau's Online Complaint System stating the following:

Lost my payments plans numberous times; **Calling me, texting me emailing me harrasing nonstop**. Hanging up; taking away credit so my credit score drops. My fingerhut account number is: XXXXXXX. **Their customer service/billing department has lost all of the payment plans they set up for me so every month my bill would be paid, they continue to call my house & cell phones, text email saying I owe money every week or two**. On 12/13/2013 they enrolled me in a temporary hardship agreement without even telling me I did not know until they sent me a letter. Before I got the letter they kept harassing me with all methods of communication to pay them more money. I made another payment then at a later date I told them about the letter they has sent me they said the hardship agreement is now null&void since you made a payment. When they did the hardship agreement they took away my credit limit which post as negative on my credit report they did not even tell me they were doing this. They post late fee to my account. For example I paid $72.00 on 1/19/14 and set up another payment arrangement for $30 to paid on the 20th of every month they sent me a text message on 1/31/14 that reads Alert your fingerhut payment of $36.92 is due on 2/1/14 call 1-866-402-1267. **At least every two weeks we get harrased my fingerhut collections to pay more money**, i am sure they are charing fee of some kind, it is the worst company I have done business with. [sic]

37.     Defendant has numerous other individually filed federal lawsuits pending against them alleging similar violations as stated in this complaint, including that Defendant's automatic telephone dialing systems continues to call people who have not provided their number or otherwise revoked consent to be called.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs jointly bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and three classes defined as follows:

**Auto-Dialer Class**: Any person in the United States who (1) Defendant or its agents placed a call; (2) to that person's cellular telephone number; (3) through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call or where the individual revoked consent, within four years prior to the filing of the Complaint through the date of final approval.

**Robo-Call Class**: Any person in the United States who (1) Defendant or its agents placed a call; (2) to that person's cellular telephone number; (3) and that call featured an artificial or pre-recorded; and (4) where Defendant has no record of prior express consent for such individual to make such call or where the individual revoked consent, within four years prior to the filing of the Complaint through the date of final approval.

**Text Message Class**: Any person in the United States who (1) Defendant or its agents placed a text message call; (2) to that person's cellular telephone number; (3) through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call or where the individual revoked consent, within four years prior to the filing of the Complaint through the date of final approval.

39. Defendant and its employees or agents are excluded from the Classes.

40. Plaintiffs do not know the number of members in the Classes, but believe the members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

41. Plaintiffs and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its

agents, illegally contacted Plaintiffs and members of the Classes via their cellular telephones by using unsolicited telephone calls and text messages, thereby causing Plaintiffs and members of the Classes to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of said Plaintiffs and members of the Classes. Plaintiffs and the Class members were damaged thereby.

42. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the definitions of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

43. The joinder of the members of the Classes is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court. The Classes can be identified through Defendant's records or Defendant's agents' records.

44. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Classes predominate over questions which may affect individual Class members, including the following:

   a. Whether, within four years prior to the filing of this Complaint through the date of final approval, Defendant or its agents placed telephone calls and text messages without the recipients' prior express consent (other than a telephone call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or pre-recorded voice system, to any telephone number assigned to a cellular telephone service;

b. Whether the equipment Defendant, or its agents, used to make the telephone calls in question was an automatic telephone dialing system as contemplated by the TCPA;

c. Whether Defendant, or its agents, systematically made telephone calls to persons featuring an artificial or pre-recorded voice;

d. Whether Defendant, or its agents, systematically made telephone calls to persons who did not previously provide Defendant with their prior express consent to receive such telephone calls;

e. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

f. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

45.  As persons that received at least one unsolicited telephone call or text message to their cell phones without their prior express consent, Plaintiffs are asserting claims that are typical of the Classes. Plaintiffs will fairly and adequately represent and protect the interests of the Classes in that Plaintiffs have no interest antagonistic to any member of the Classes.

46.  Plaintiffs and the members of the Classes have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, members of the Classes could afford to individually seek legal redress for the wrongs complained of herein.

47.  Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

48.  A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to

comply with federal law. The interest of the members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

49.   This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's practices challenged herein apply to and affect each of the Classes' members uniformly. Plaintiffs challenge to those practices hinges on Defendant's conduct with respect to the Classes as whole, not on facts or law applicable only to Plaintiffs.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §§ 227 ET SEQ.**

50.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

51.   Each such telephone call and text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively make thousands of phone calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

52.   Defendant also made telephone calls featuring a prerecorded or artificial voice without the prior express consent of the Plaintiffs and other members of the Class to receive such telephone calls.

53. Defendant also text messages, en masse, through the use of a short code and without the prior express consent of the Plaintiffs and the other members of the Class to receive such text messages.

54. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

55. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

56. Plaintiffs and the Classes are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §§ 227 *ET SEQ.*

57. Plaintiffs incorporate by reference by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. Each such telephone call and text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively make thousands of phone calls simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

59. Defendant also made telephone calls featuring a prerecorded or artificial voice without the prior express consent of the Plaintiffs and other members of the Class to receive such telephone calls.

60. Defendant also text messages, en masse, through the use of a short code and without the prior express consent of the Plaintiffs and the other members of the Class to receive such text messages.

61. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

62. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

63. Plaintiffs and the Classes are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

**Wherefore**, Plaintiffs respectfully request the Court to grant Plaintiffs and the Class members the following relief against Defendant:

### FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

64. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each member of the Classes $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

65. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiffs seek injunctive relief prohibiting such conduct in the future.

66. Any other relief the Court may deem just and proper.

### SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

67. As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

68. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

69. Any other relief the Court may deem just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 14, 2016       By: *s/ Thomas J. Lyons Jr.*

Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 0249646
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
*tommycjc@aol.com*

Ronald A. Marron
(pro hac vice pending)
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
*ron@consumersadvocates.com*

*Attorneys for Plaintiffs and the Proposed Class*