**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ELIZABETH BUSCH, on behalf of herself and all others similarly situated,

Plaintiff,

v.

BLUESTEM BRANDS, INC. D/B/A FINGERHUT,

Defendant.

Case No. 0:16-cv-00644-WMW-HB

**FIRST AMENDED COMPLAINT AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq.***

DEMAND FOR JURY TRIAL

## INTRODUCTION

1. Elizabeth Busch ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Bluestem Brands, Inc. dba Fingerhut ("Defendant" or "Fingerhut"), in negligently, and/or willfully contacting Plaintiff through telephone calls on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

2. Fingerhut is an online retailer which allows consumers to purchase goods through fingerhut.com, the Fingerhut catalog or over the phone through a

Fingerhut credit account. Fingerhut also sends text messages to consumers for purchases made and debt accrued through their service.

3. In an attempt to collect on alleged debts owed, Fingerhut routinely contacts alleged debtors through text messages with automatic telephone dialing equipment. However, when Fingerhut is unable to reach the alleged debtors by a telephone number provided by the debtor, Fingerhut results to locating new numbers on its own through unreliable skip tracing methods or through number trapping – a number that it necessarily lacks express consent to call. Unfortunately, as a result of this business practice, Fingerhut regularly sends text messages to cellular telephone numbers, without consent, in violation of the TCPA. Additionally, after being warned of an incorrect intended recipient of the messages, Fingerhut continues to send text messages to wrong numbers.

4. The TCPA strictly forbids nuisance text messages exactly like those alleged in this Complaint – intrusive text messages to private cellular phones, placed to numbers obtained without the prior express consent of the call recipients.

5. Fingerhut's violations caused Plaintiff and members of the Class actual harm, including aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages, as well as the violation of their statutory rights.

6. Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Fingerhut's conduct, and is likely to be redressed by a favorable decision in this action.

7. Plaintiff seek an injunction stopping Fingerhut from sending unsolicited text messages, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each text messages in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

9. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, a federal statute.

10. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. §§ 1391(b) because Defendant, at all times herein mentioned, was doing business in the State of Minnesota, and a substantial part of the events giving rise to the claim occurred in this jurisdiction.

## PARTIES

11. Plaintiff Elizabeth Busch is, and at all times mentioned herein was, a resident of the State of Connecticut. She is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153 (32).

12. Defendant Fingerhut maintains its corporate office at 6509 Flying Cloud Dr., Eden Prairie, MN 55344 and is a "person" as defined by 47 U.S.C. § 153 (32).

13. Plaintiff alleges that at all times relevant herein Fingerhut conducted business in the state of Minnesota and within this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. §§ 227 *et seq.*

14. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

15. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

17. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

"prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

18. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiffs provided express consent within the meaning of the statute.

19. A text message is a call under the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

**FACTUAL ALLEGATIONS**

20. Plaintiff Elizabeth Busch does not have a Fingerhut account and never provided Fingerhut with her cellular phone number.

21. However, despite having no account with Fingerhut, beginning around at least October 2013, Plaintiff Elizabeth Busch received unsolicited phone calls and text messages from Fingerhut to her wireless phone, for which Plaintiff Elizabeth Busch provide no consent to call. Plaintiff Elizabeth Busch does not know how Fingerhut received her cellular number but, on information and belief, believes Fingerhut was contacting her regarding another "unknown" individual's Fingerhut account.

22. Specifically, Fingerhut called Plaintiff on her cellular phone eleven (11) times during the time period of October 2013 to January 3, 2014 (at one time six (6) times in one day), regarding another "unknown" individual's Fingerhut account. Additionally, Fingerhut sent three (3) text messages to Plaintiff during the time

---

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

period of December 27, 2013 to January 31, 2014, regarding that "unknown" individual's Fingerhut account.

23. On information and belief, on December 27, 2013, Fingerhut sent the following unsolicited text message to Plaintiff's cellular phone: "Alert: Your Fingerhut payment of $16.99 is due 1/01/14. Call 1-800-208-2500 to make a payment. Txt FHSTOP to Stop FHHELP for Help Msg&DataRatesAply".

24. On information and belief, on December 31, 2013, Fingerhut sent the following unsolicited text message to Plaintiff's cellular phone: "Alert: Your Fingerhut payment of $16.99 is due 1/01/14. Call 1-800-208-2500 to make a payment. Txt FHSTOP to Stop FHHELP for Help Msg&DataRatesAply".

On information and belief, during Fingerhut's tenth (10th) unsolicited phone call to Plaintiff on January 3, 2014, Fingerhut was informed that it reached a 3rd Party who was not the intended recipient of the call. Despite being informed that it reached a 3rd Party who was not the intended recipient of the call, Fingerhut placed a twelfth (12th) unsolicited phone call to Plaintiff again on January 3, 2014. During that twelfth (12th) unsolicited phone call from Fingerhut, Plaintiff again informed that she was the wrong party. However, despite being informed that Plaintiff was a wrong party/incorrect recipient to the calls and text messages regarding the "unknown" customer's account, on information and belief, on January 31, 2014, Fingerhut sent a third (3) unsolicited text message to Plaintiff's cellular phone which stated "Alert: Your Fingerhut payment of $36.98 is due 2/01/14. Call 1-866-402- 1267 to make a payment. Txt FHSTOP to Stop FHHELP for Help Msg&DataRatesAply".

25. These three (3) unsolicited text messages placed to Plaintiff's wireless telephones were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff's cellular telephone.

26. The existence of this ATDS is further evidence by the sheer volume of calls placed by Fingerhut in one day. Defendant could only make such calls using such automated equipment.

27. The existence of this ATDS is further evidenced by the fact that the text messages received by Plaintiff were generic as to the intended recipient, i.e., the text messages do not address Plaintiff individually or in any fashion. Such generic and impersonal messages indicate that these text messages were sent in bulk fashion to numerous cellular telephones at one time and not manually delivered by human intervention for each and every delivery.

28. The telephone numbers that Defendant, or its agents, called were assigned to cellular telephone services for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

29. These telephone calls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

30. Despite being informed of a wrong party, Fingerhut did not cease to make autodialer text messages to Plaintiff's cellular phone.

31. On information and belief, Fingerhut has a corporate policy to use an automatic telephone dialing system, and to make autodialer calls just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of a number.

32. Thus, these telephone calls and text messages by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

33. Defendant has numerous other individually filed federal lawsuits pending against them alleging similar violations as stated in this complaint, including that Defendant's automatic telephone dialing systems continues to call people who have not provided their number or otherwise revoked consent to be called.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself as defined as follows:

> Any person in the United States who (1) Defendant or its agents placed a text message call; (2) to that person's cellular telephone number; (3) through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call or where the individual revoked consent, within four years prior to the filing of the Complaint through the date of final approval.

35. Defendant and its employees or agents are excluded from the Class.

36. Plaintiff does not know the number of members in the Class, but believe the members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

37. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and members of the Classes via their cellular telephones by using unsolicited text messages, thereby causing Plaintiff and members of the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of said Plaintiff and members of the Class. Plaintiff and the Class members were damaged thereby.

38. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the definitions of the Class to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

39. The joinder of the members of the Class is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

40. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

a. Whether, within four years prior to the filing of this Complaint through the date of final approval, Defendant or its agents sent text messages without the recipients' prior express consent (other than a telephone call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system, to any telephone number assigned to a cellular telephone service;
b. Whether the equipment Defendant, or its agents, used to make the telephone calls in question was an automatic telephone dialing system as contemplated by the TCPA;
c. Whether Defendant, or its agents, systematically sent text messages to persons who did not previously provide Defendant with their prior express consent to receive such text messages;
d. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and
e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

41. As persons that received at least one text message to her cell phone without her prior express consent, Plaintiff is asserting claims that are typical of the

Classes. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Classes.

42. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, members of the Class could afford to individually seek legal redress for the wrongs complained of herein.

43. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

44. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of the members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

45. This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect each of the Class' members uniformly. Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the Class as whole, not on facts or law applicable only to Plaintiff.

## FIRST CAUSE OF ACTION
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. §§ 227 *ET SEQ.*

46. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

47. Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

48. Defendant's text messages were sent without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

49. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

50. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. §§ 227 *ET SEQ.*

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. Each such text message was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

54. Defendant text messages were sent without the prior express consent of the Plaintiff and the other members of the Class to receive such text messages.

55. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

56. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

57. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

## FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

58. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each member of

the Class $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

60. Any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. §§ 227 *ET SEQ.*

61. As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

62. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

63. Any other relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demand a trial by jury on all issues so triable.

Dated: September 20, 2016

By: *s/ Thomas J. Lyons Jr.*

Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 0249646
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
*tommycjc@aol.com*

Ronald A. Marron (*Pro hac vice*)
Alexis M. Wood (*Pro hac vice*)
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
*ron@consumersadvocates.com*

***Attorneys for Plaintiffs and the Proposed Class***